**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIANS FOR EQUAL RIGHTS FOUNDATION,<br><br>*Plaintiff*,<br><br>v.<br><br>MISTY HER and VALERIE F. DAVIS,<br><br>*Defendants*. | Case No.  1:25-cv-00250-BAM<br><br>**ORDER GRANTING MOTION TO DISMISS COMPLAINT WITH LEAVE TO AMEND**<br><br>(Doc. 15) |

Plaintiff Californians for Equal Rights Foundation initiated this action on February 27, 2025.  (Doc. 1.)  The matter is now before the Court on a motion to dismiss the complaint, filed by defendants Misty Her, interim superintendent of the Fresno Unified School District, and Valerie F. Davis, President of the Fresno Unified School District, on April 21, 2025.  (Doc. 15.)[1] The motion has been fully briefed and the Court has deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g).  For the reasons explained below, Defendants' motion to dismiss is GRANTED, with leave to amend.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all further proceedings in this action, including trial and entry of judgment pursuant to 28 U.S.C. 636(c)(1). (Doc. 21.)

# BACKGROUND

### A. Procedural Background

On February 27, 2025, Plaintiff Californians For Equal Rights Foundation ("CFER" or the "Plaintiff") brought this action alleging violations of the Equal Protection Clause of the Fourteenth Amendment (42 U.S.C. § 1983), Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d), and the California Constitution, article I, section 31 (Proposition 209) by Misty Her, interim superintendent of the Fresno Unified School District ("Fresno Unified"), and Valerie F. Davis, President of the Fresno Unified in their official capacities (collectively, the "Defendants"). (Doc. 1.)  Plaintiff alleges that Fresno Unified, through its Office of African American Academic Acceleration (the "A4 Office" or "A4"), unlawfully discriminated on the basis of race against non-African American students. The Court issued summons that same day, (Doc. 5), and amended summons were issued on February 28, 2025.  (Doc. 7.)

On March 4, 2025, the summons were returned executed on Misty Her and Valerie F. Davis.  (Docs. 10 and 11.)  On April 21, 2025, Defendants filed a motion to dismiss the complaint for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  (Doc. 15.)  On May 19, 2025, Plaintiff filed its opposition to Defendants' motion to dismiss ("Opposition").  (Doc. 23.)  On May 29, 2025, Defendants filed their reply.  (Doc. 24.)  The motion is fully briefed.

After thoroughly reviewing all relevant filings and for the reasons stated below, the Court will grant the motion to dismiss with leave to amend the complaint.

### B. Parties

Plaintiff Californias for Equal Rights is a nonprofit organization incorporated under the laws of California and headquartered in San Diego County.  (Doc. 1 ¶ 9.)  Plaintiff provides that "[i]ts mission is to advocate for the principle of equal rights for all by opposing race-based discrimination in public education, employment, and contracting."  (*Id*.)  Plaintiff alleges that it has members who reside in the Fresno Unified and who have children who are currently enrolled in Fresno Unified schools.  (*Id.* ¶ 10.)  Plaintiff alleges that the children of these members "are

not African American and are either eligible for or would benefit from the same types of academic support offered by the A4 Office programs." (*Id.*)

Plaintiff identifies three pseudonymous members of its organization.[2] CFER Member "A" is a parent of two children, neither of whom are African American and one of whom attends Robinson Elementary School. (Doc. 1 ¶ 11.) CFER Member "B" is a parent of four children, none of whom are African American and three of whom attend Fresno Unified schools: a 10th grader at Fresno High School, a 5th grader at Bullard Talent K-8 School, and 3rd grader at Hamilton K-8 school. (*Id.* ¶ 12.) CFER Member "C" is a parent of two children, neither of whom are African American and both of whom attend Fresno Unified Schools: an 8th grader at Tenaya Middle School and a 9th grader at Bullard High School. (*Id.* ¶ 13.) Plaintiff asserts that although the children "would" or "would likely" "be interested in the A4 Office's programs, neither [the parent] nor [the children] were ever informed of the programs." (*Id.* ¶¶ 11-13.)

Defendant Misty Her is the Interim Superintendent of Fresno Unified and is named here in her official capacity. (*Id.* ¶ 14.) Plaintiff alleges that Her "exercises ultimate administrative authority over the District's programs, including the A4 Office, and is responsible for implementing and enforcing the policies and programs challenged in this action." (Doc. 1 ¶ 14.)

Defendant Valerie F. Davis is the President of the Fresno Unified Board of Education and is named here in her official capacity. (*Id.* ¶ 15.) Plaintiff alleges that Davis "participates in establishing and approving policies governing the District's programs, including those challenged

---

[2] Defendant contends that Plaintiff cannot establish standing because it has identified its members only by pseudonym. (Doc. 15 at 4-5.) Sister circuits have found that a plaintiff organization's identification of its affected members by pseudonym poses no bar to the organization's ability to establish standing under the standard set forth in *Summers v. Earth Island Institute*, 555 U.S. 488, 498 (2009) (in order to establish standing, an organization suing on behalf of its members must "make specific allegations establishing that at least one identified member had suffered or would suffer harm.") *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 773 (11th Cir. 2024) (*Summers* does not "purport[] to impose a naming requirement simply by using the term 'identify.' . . . we have routinely permitted organizations to sue on behalf of pseudonymously identified members"); *Speech First, Inc. v. Shrum*, 92 F.4th 947, 952 (10th Cir. 2024) (under the *Summers* standard, "to identify or to name a person does not require the use of the legal name").

in this action, and oversees their implementation alongside other Board members." (*Id.*)

### C. Fresno Unified School District

Fresno Unified enrolls over 70,000 students in grades K-12. (*Id.* ¶ 16.) According to Plaintiff's complaint, over two-thirds of Fresno Unified students are identified as Hispanic (over 48,000 students in 2022-23). (*Id.* ¶ 17.) Plaintiff's complaint provides that Fresno Unified enrolls approximately 5,100 African American students, 5,300 White and non-Hispanic students, and 7,400 Asian students. (*Id.*) One in five students enrolled in Fresno Unified schools qualify as "English Learners." (Doc. 1 ¶ 17.)

Plaintiff's complaint notes that "[t]here are statistical disparities in performance among identified racial and ethnic groups at Fresno Unified." (*Id.* ¶ 19.) While overall only 22% of the district's elementary students read at grade level, 38% of White students, 25% of Asian students, 21% of Hispanic students, 21% of American Indian students and 16% of African American students read at grade level. (*Id.*) Plaintiff notes further that, in general, only 22% of K-6 students read at grade level. (Doc. 1 ¶ 18.) Only 17% of students are at grade level for mathematics. (*Id.*)

### D. A4 Programs

According to the complaint, Fresno Unified created the A4 Office to "address the disparities in academic outcomes faced by African American students." (*Id.* ¶ 20.) The A4 Office offers approximately thirteen programs which, while Plaintiff does not name each program, include "summer reading 'for African American students,' math camps for '5th and 6th grade African American students,' and specialized leadership academies and college-prep programs targeted and marketed exclusively to black students." (Doc. 1 ¶ 22.) Plaintiff alleges that Fresno Unified allocated over $12 million it its 2024 budget for the A4 Office and its programs. (*Id.* ¶ 21.) Plaintiff cites to the A4 website's descriptions of the A4 programs. (*Id.* ¶¶ 20, 22.) In their Opposition, Defendants point to other sections of the same webpage which they argue show that the A4 programs do not "impose any racial restriction or deny access" and state clearly that "A4

4

has served 7,950 students of all racial and ethnic backgrounds." (Doc. 24 at 3.) Defendants point out that "[p]er the program description, that is 2,750 more students than the entire African American population at Fresno Unified." (*Id.* at 3.)

Plaintiff alleges the A4 programs "are designed, marketed, and promoted as only available to black students." (Doc. 1 ¶¶ 2, 22.) Plaintiff alleges that "[o]fficial descriptions, advertisements, and District communications brand these programs as being 'for African Americans'—and do not indicate that non-African American students are welcome," that "[t]eachers directly invite their African American students to participate in these programs, at the direction of administrators, and do not encourage or inform non-black students, even if they are in similar academic need," and that "[n]on-black students who learn about A4 programs are directed to other extracurricular offerings because of their race." (*Id.* ¶¶ 23-25.)

At its core, Plaintiff alleges that the harm suffered is that the A4 programs were not adequately advertised to CFER's non-African American members and their children, and "[e]ven if they had learned about the A4 programs, they and their children are not made to feel welcome because of their race." (*Id.* ¶¶ 22, 29.) As a result, Plaintiffs allege that non-African American students "have been effectively denied the opportunity to participate in publicly funded education programs because of race." (*Id.* ¶ 30.) Plaintiff alleges that it has members "whose children would benefit from these programs but have not received (and reasonably believe that they will never receive) the same outreach or invitation afforded to black students." (*Id.* ¶ 29.) Plaintiff further alleges that even if its members "had learned about the A4 programs, they and their children are not made to feel welcome because of their race." (*Id.*)

## LEGAL STANDARD

### A. Rule 12(b)(1)

The Constitution confers limited authority to the federal courts. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016). A litigant seeking to bring a lawsuit in federal court must establish that he is bringing a "case or controversy" under Article III of the U.S. Constitution. *Id.* at 338.

Standing is one component of the case-or-controversy requirement of Article III. A proper case or controversy exists only when at least one plaintiff establishes standing to sue. *Murthy v. Missouri*, 603 U.S. 43, 57, 144 S.Ct. 1972, 1985-1986 (2024). To establish "a case or controversy" within the meaning of Article III, the plaintiff must show that the plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,* 578 U.S. at 338

Under Federal Rule of Civil Procedure 12(b)(1), a party may assert a defense that a court lacks subject-matter jurisdiction to hear a case. Fed. R. Civ. P. 12(b)(1). The party invoking federal jurisdiction bears the burden of establishing the elements of standing, and each element must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). On a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice." *Id.* at 561. Furthermore, "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp*., 658 F.3d 1060, 1067 (9th Cir. 2011).

### B. Judicial Notice

In ruling upon a motion to dismiss, the Court may consider matters of public record outside of the pleadings which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir. v. Little Co. of Mary Hospital*, 844 F.2d 646, 649 (9th Cir. 1988). Rule 201 permits a court to take judicial notice of an adjudicative fact "not subject to reasonable dispute" because the fact is either "(1) generally known within the territorial jurisdiction of the trial court or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court "may take judicial notice on its own" or "must take judicial notice if a party requests it and the court is supplied with the necessary information.

(*Id.*)  "Even if a document is not attached to the complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see also Kneivel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Plaintiff's complaint alleges causes of action that are premised upon the information contained on Fresno Unified's official A4 department website.  (Doc. 1 ¶¶ 20 n.1, 22 n.2.)  Because Plaintiff incorporated by reference the official A4 website in its complaint, the Court will take judicial notice of the statistics provided by the A4 website presenting this information, as well as the statistics cited from the A4 website in Defendants' Opposition.  *See Vargas v. Wells Fargo Bank, N.A.*, 2012 WL 2931220, at *7 (N.D. Cal. July 18, 2012) (holding that the Court may take judicial notice of "government websites" as documents "not subject to reasonable dispute"); *see also Cota v. Liberty Mut. Ins.*, 2018 WL 1453209, at *2 (E.D. Cal. Mar. 23, 2018) (same).  Furthermore, there is no dispute by Defendants that the website information matches what can currently be found on Fresno Unified's website.  *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1101 n.2 (9th Cir. 2014) (taking judicial notice of a webpage because "it is referenced and relied on in the body of the complaint" and "no party has questioned the authenticity of this document").

## **PARTIES' POSITIONS**

Defendants move to dismiss the complaint on the grounds that (1) Plaintiff lacks organizational standing because its identified members lack individual standing, and (2) Plaintiff has not alleged an actual case or controversy under Article III of the U.S. Constitution.  (Doc. 15.)  Defendants argue that Plaintiff lacks standing to challenge the A4 programs because Plaintiff does not allege "that any of its members, or their children, attempted to access or were denied access to any A4 programs for any reason," that there was "any actual or imminent deprivation of educational opportunity," and that Plaintiff's allegations are speculative in nature rather than concrete.  (Doc. 15 at 3, 4.)

Plaintiff disputes that it is required to show that any of its members' children were denied access to A4 programs.  (Doc. 23 at 1.)  Rather, Plaintiff maintains that "[i]n equal protection cases, the relevant constitutional injury arises from the exposure to unequal treatment itself—not the ultimate denial of a benefit."  (*Id.*)  Plaintiff argues that "CFER's members are injured by the design, promotion, and effect of the challenged programs, regardless of whether they have applied and been denied entry," and that where a plaintiff "seeks forward-looking relief," it "need only show that the injury its members allege is likely to occur in the future."  (*Id.* at 2, 6.)  Plaintiff further argues that a member of a racial group disadvantaged by a government policy "need not allege that he would have obtained the benefit but for the barrier in order to establish standing," and the injury in such cases comes from "'the denial of equal treatment resulting from the imposition of the barrier,' not the loss of access to any benefit."  (Doc. 23 at 6) (*citing N.E. Fla. Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993)).  Rather, Plaintiff contends that it is "'exposure' to unequal treatment alone establishes injury sufficient for standing."  (Doc. 23 at 6) (quoting *Wooden v. Bd. Of Regents of Univ. Sys. of Ga.*, 247 F.3d. 1262, 1279 (11th Cir. 2001).

In their Reply, Defendants argue that the case authorities provided by Plaintiff are distinguishable from the facts of this case.  (Doc. 24 at 2.)  Defendants argue that the cases cited by Plaintiff "involved formalized racial barriers, competitive selection/admissions processes, and plaintiffs that were ready and able to participate," and that standing in those cases "required a plaintiff that was actually, not speculatively, disadvantaged by a defined discriminatory policy." (Doc. 24 at 2.)

Because the Court finds that Plaintiff fails to establish standing and, independently, that Plaintiff's claims are not yet ripe for adjudication, the suit must be dismissed under Rule 12(b)(1).

## ARTICLE III STANDING

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984).  "A foundational principle of

Article III is that 'an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation.'" *Trump v. New York*, 592 U.S. 125, 131 (2020). To satisfy constitutional standing requirements, Plaintiff must show that "(1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc.*, 528 U.S. at 180-81 (internal quotation marks omitted). A litigant "must clearly and specifically set forth facts sufficient to satisfy these Art. III standing requirements." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

### a. Injury-in-Fact

The significant issue in the present case is whether Plaintiff adequately pleads an injury-in-fact. Injury-in-fact is the "first and foremost of standing's three elements." *Spokeo*, 578 U.S. at 338 (internal quotation marks omitted). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo,* 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560). "A concrete injury must be *de facto*; that is, it must actually exist." *Spokeo*, 578 U.S. at 340 (internal quotation marks omitted). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 650, n.1); *Lujan*, 504 U.S. at 563 (injury in fact "requires that the party seeking review be himself among the injured." (quoting *Sierra Club v. Morton,* 405 U.S. 727, 734-35 (1972)). A threatened injury may be sufficiently concrete to satisfy a plaintiff's burden, but the plaintiff must still have "personally suffered the actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 472 (1982).

### 1. The Claimed Injuries to Plaintiffs' Members are Not Sufficiently Concrete and Particularized to Establish Standing

Plaintiff has made no allegations sufficient to show that its members have suffered a

concrete and particularized injury.[3]  Plaintiff's complaint centers on allegations that (1) the A4 programs are advertised as being "for" only African American students, (Doc. 1 ¶ 23), (2) Fresno Unified fails to extend outreach or invitation to non-African American students to participate in A4 programs, (*id.* ¶¶ 24, 29), (3) non-African American students are directed to other offerings if they attempt to participate in A4 programs, (*id.* ¶ 25), and (4) the A4 programs are exclusionary in design such that non-African American students feel unwelcome to participate in the A4 programs due to their race.  (Doc. 1 ¶ 29.)

The complaint contains no factual allegations that the members' non-African American children were actually denied access to a A4 Office program on the basis of race or that any of Plaintiff's members or their children were actually directed to non-A4 programs on the basis of race, were made to feel unwelcome due to any specific acts because of their race.  Instead, Plaintiff relies on general and conclusory allegations that are not "concrete and particularized" and do not affect Plaintiff's members "in a personal and individual way."  *Spokeo*, 578 U.S. at 339.  (Doc. 1 ¶ 24 ("Teachers directly invite their African American students to participate in these programs, at the direction of administrators, and do not encourage or inform non-black students, even if they are in similar academic need"); ¶ 25 ("Non-black students who learn about A4 programs are directed to other extracurricular offerings because of their race."); ¶ 26 ("The A4 programs are designed and intended only for students of a particular race and are racially exclusionary in their very design and operation"); ¶ 30 ("CFER's members have been effectively denied the opportunity to participate in publicly funded education programs because of race"); ¶ 27 ("The district's purpose is to create a racially segregated environment in these programs as much as possible and to give preferential treatment to certain students because of their race."))

Plaintiff's allegations do not show its members' "personal stake" in the case such that lack of access to the A4 programs affected the Plaintiff or its members in a personal and individual

---

[3] When ruling on a Rule 12(b) motion to dismiss, the Court takes as true the well-pleaded facts in the FAC and does not consider evidence beyond the pleadings. *Stanley v. City of Sanford, Fla.*, 145 S. Ct. 2058, 2062 (2025). As discussed above, the Court may also take judicial notice of facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b).

way.  The complaint does not contain specific factual allegations that relate to any member or member's child specifically or individually.  Rather, Plaintiff's allegations are generic to any non-African American student in Fresno Unified, not to any of Plaintiff's named members specifically.  *Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction.")  The allegations are a generalized grievance that the A4 programs in fact exist which is insufficient to show harm to Plaintiff's members.  "A citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally," *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024), but must have a "personal stake" in the case. *Loffman v. California Dep't of Educ.*, 119 F.4th 1147, 1158 (9th Cir. 2024).

Finally, Plaintiff does not allege how its members were specifically harmed by lack of access to the A4 programs.  Beyond noting that the A4 Office oversees programs "including summer reading 'for African American students,' math camps for '5th and 6th grade African American students,' and specialized leadership academies and college-prep programs targeted and marketed exclusively to black students," (Doc. 1 ⁋ 22), Plaintiff does not allege how the programs were marketed, whether any member's child would be eligible to participate in or otherwise interested in any specific program, the extent to which that child would have benefited for any specific program, whether there was a competitive admissions process for any program, or whether any program included non-African American student participants.  As explained above, the Court cannot rule on generalized grievances based on speculation that Plaintiff's members' children would have felt unwelcome.  *Valley Forge Christian College*, 454 U.S. at 473 (federal courts are not "publicly funded forums for the ventilation of public grievances.")  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the complaint's

framework, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

Because Plaintiff fails to allege sufficient facts to show that its members have suffered a concrete and particularized injury, Plaintiff fails to satisfy Article III's injury-in-fact requirement.

### 2.   The Injuries Claimed to Plaintiff's Members Are Not Actual or Imminent

In addition to failing to allege that its members have suffered a concrete and particularized injury, Plaintiff has not sufficiently alleged that its members have suffered an injury that is actual or imminent. *Spokeo,* 578 U.S. at 339. In its Opposition, Plaintiff argues that where it "seeks forward-looking relief," it "need only show that the injury its members allege is likely to occur in the future." (Doc. 23 at 6.)

Plaintiff is correct that "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC*, 594 U.S. at 435. "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)).

Plaintiff has not alleged a sufficiently imminent and substantial risk of future harm. Plaintiff alludes to *possible* future injury but does not specifically allege that any of its members' children are facing a "certainly impending" injury. (Doc. 1 ¶ 29 (CFER members' children "reasonably believe they will never receive" "the same outreach of invitation afforded to black students"); *id.* ¶ 32 ("Absent injunctive relief, Fresno Unified and its officials will continue implementing these race-based programs, infringing on the constitutional and statutory rights of CFER's members and other students in the District.")). "Allegations of possible future injury do not satisfy the requirements of Art. III." *Whitmore*, 495 U.S. at 158. Rather, "[a] threatened injury must be certainly impending to constitute injury in fact. *Whitmore*, 495 U.S. at 158

(internal citation and quotation marks omitted); *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024) ("Moreover, the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon.").

With regard to allegations that are specific to the members' children, Plaintiff asserts only conjectural, hypothetical, or conclusory allegations that are, alone, insufficient to establish standing. *Spokeo,* 578 U.S. at 339; *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1006 (9th Cir. 2011) (finding that the mere allegation that a local ordinance "was intended to, and does, impact [Plaintiff's] operations as landlords" to be a "conclusory allegation [] insufficient to establish standing.") Plaintiff speculates that Member A and Member C's children "would likely be interested in the A4 Office's programs," (Doc. 1 ¶¶ 10, 13) and offers only the bare conclusory allegation, without elaboration, that Member B's children "would be interested in the A4 Office's programs." (*Id.* ¶ 12.) At this point, it is "surely no more than speculation" to assert that any of the members' children mentioned will have need for, be eligible for, or have the desire to participate in another A4 Office Program. *City of Los Angeles v. Lyons*, 461 U.S. 95, 108 (1983).

Speculative injury is insufficient to satisfy the requirement of actual or imminent injury. In *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 272 (S.D.N.Y.), *aff'd*, 788 F. App'x 85 (2d Cir. 2019), the court held that only one plaintiff had standing to challenge the admissions process to New York's specialized schools. That plaintiff was a parent of a child who had satisfied the eligibility requirements of (1) already taken the specialized school admissions test, (2) currently going through the specialized school admissions process, and (3) had a desire to attend a specialized school. *Christa McAuliffe Intermediate Sch. PTO, Inc.*, 364 F. Supp. 3d at 272. Because this plaintiff's child had taken the steps to qualify under the challenged high school process, the Court found the purported injury was "no longer speculative, but actualized." *Id.* But other plaintiffs were found not to have standing in *Christa*

13

*McAuliffe Intermediate Sch. PTO, Inc.*  The court found that other plaintiffs did not have an actual or imminent injury because the children were several years away from applying to high school, and they may decide that they do not wish to attend a specialized school by the time they reach high school.  *Id.* (the students' "current 'some day' intentions to attend a specialized school are … insufficient to show the existence of an imminent injury.")  Thus, speculation as to an injury is insufficient satisfy the requirement of actual or imminent injury.

 Plaintiff has not alleged sufficient factual support to establish standing.  Because Plaintiff fails to allege sufficient facts to show that the purported injury is actual or imminent, Plaintiff fails to satisfy Article III's injury-in-fact requirement.

### 3.  Any Threatened Injury is Not "Certainly Impending"

"Threatened injury must be *certainly impending* to constitute injury in fact" and "allegations of *possible* future injury are not sufficient" to satisfy Article III standing.  *Clapper*, 568 U.S. at 409 (internal citation and quotation marks omitted).

In a similar argument, Plaintiff contends that Fresno Unified's practice of promoting the A4 programs "only towards students of a specific race" and "turn[ing] some students away based on their race" "involve[s] the real risk of future injury to CFER's members, for example, by excluding their children from referral to a program which could benefit them."  (Doc. 23 at 5.)

Any "risk" of future injury put forth here (Doc. 23 at 5) depends on a "highly attenuated chain of possibilities."  These possibilities include that the children actually have an interest to participate in a program, or that there will be an offered A4 program that "could" benefit that specific child.  (*Id.*)  To the extent that Plaintiff argues that any cognizable injury-in-fact is a threatened injury, Plaintiff's theory of future injury is "too speculative" to constitute "certainly impending." *Clapper*, 568 U.S. at 401.

### 4.  The A4 Programs Are Distinguishable from the Cases Relied Upon by Plaintiff

In their Motion to Dismiss, Defendants argue that the complaint fails to demonstrate an injury in fact because "[n]one of Plaintiff's members have alleged a denial of any educational opportunity, denial from placement in any school, exclusion from any educational program on the basis of race (or any other basis), or that they suffered any other disparate treatment," and that the complaint is "rife with conjecture about what *might* happen if their membership had, hypothetically, sought to engage in any A4 programs that they 'would likely be interested in.'" (Doc. 15 at 4.)

In its Opposition, Plaintiff argues that its members need not have applied to the A4 programs and been denied based on race to have suffered an injury sufficient to establish standing.  (Doc. 23 at 4.)  Plaintiff argues that a member of a racial group disadvantaged by a government policy "need not allege that he would have obtained the benefit but for the barrier in order to establish standing"; rather, the injury in such cases comes from "'the denial of equal treatment resulting from the imposition of the barrier,' not the loss of access to any benefit." (Doc. 23 at 6) (*citing N.E. Fla. Chapter of the Associated Gen. Contractors of Am.*, 508 U.S. at 666).  Plaintiff asserts that "'exposure' to unequal treatment alone establishes injury sufficient for standing." *Id.* (citing *Wooden*, 247 F.3d at 1279.)

Plaintiff is correct that the denial of an equal opportunity for consideration for a benefit or privilege can give rise to an injury conferring standing, and that this principle of law has been applied in the educational context.  *See Regents of Univ. of Cal. v. Bakke,* 438 U.S. 265, 280–81 n.14 (1978).  But based on the allegations in the complaint, the challenge to the A4 programs is distinguishable from the cases cited by Plaintiff challenging different type of programs.

The challenged program in *N.E. Chapter of the Associated Gen. Contractors of Am.* involved a city ordinance that "required that 10% of the amount spent on city contracts be set aside each fiscal year for so-called 'Minority Business Enterprises.'" *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville, Fla*., 508 U.S. 656, 658, (1993).

The plaintiff, a construction association that included members who do not qualify as Minority

Business Enterprises under the city ordinance, was found to have standing to bring an equal

protection claim because it was able to "demonstrate that it is able and ready to bid on contracts

and that a discriminatory policy prevents it from doing so on an equal basis." *Ne. Fla. Chapter of*

*Associated Gen. Contractors of Am.*, 508 U.S. at 666.  "[T]he inability to compete on an equal

footing in the bidding process" was held to constitute a cognizable injury-in-fact rather than the

loss of any contract.  *Id.*; *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701,

719 (2007) ("As we have held, one form of injury under the Equal Protection Clause is being

forced to compete in a race-based system that may prejudice the plaintiff . . .").

    In *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007), a

nonprofit corporation of parents of children who may have been denied assignment to their

chosen high school because of race could validly claim a cognizable injury under the Equal

Protection Clause.  The plaintiff challenged a school district's student assignment plan that

"requires all nonmagnet schools to maintain a minimum black enrollment of 15 percent, and a

maximum black enrollment of 50 percent."  *Parents Involved in Cmty. Sch.*, 551 U.S. at 716.

Students new to the district were assigned to a school based on several factors, including the

available space within the school and whether the student's race "would contribute to the school's

racial imbalance" according to the district's racial guidelines.  *Parents Involved in Cmty. Sch.*,

551 U.S. at 716-17.  Plaintiff is correct that the plaintiff association in *Parents Involved* was not

required to plead that members' children have denied admission to a school based on race.

*Parents Involved in Cmty. Sch.*, 551 U.S. at 718.  But as even Plaintiffs acknowledge, (Doc. 23 at

7), the Supreme Court characterized plaintiff's injury in *Parents Involved in Cmty. Sch.* as "being

forced to *compete* for seats at certain high schools in a system that uses race as a deciding factor

in many of its admissions decisions," and "being forced to *compete* in a race-based system that

may prejudice the plaintiff." *Parents Involved in Cmty. Sch.*, 551 U.S. at 719 (emphasis added).

Thus, *Parents Involved in Cmty. Sch.* is distinguishable based on the plaintiff being forced to

compete in a race-based system that may prejudice the plaintiff.

Similarly, Plaintiff's reliance on *Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869 (9th Cir. 1995) is unavailing.  In *Bras*, a contractor challenged a power company's ordinance that established "goals" for minority participation in municipal projects.[4]  The court held that the plaintiff was not required to show that he "presently intends to submit bids" to the municipal power company in order to establish injury-in-fact.  *Bras*, 59 F.3d at 873.  Plaintiff, here, acknowledges that the program in *Bras* required plaintiff to show "that they are forced to compete on an unequal basis."  (Doc. 23 at 6) (quoting *Bras*, 59 F.3d at 873).  Plaintiff's complaint here does not allege that any A4 Office program requires a competitive application or utilizes a quota or proportion system for participation based on race.  Plaintiff has not alleged that its members' children were "forced to compete in a race-based system that may prejudice" them.  *Parents Involved in Cmty. Sch.*, 551 U.S. at 719.

Finally, Plaintiff relies on *Wooden v. Bd. Of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262 (11th Cir. 2001) that "a member of a racial group disadvantaged by a government policy need not allege that he would have obtained the benefit but for the barrier in order to establish standing" and that "standing is simply about whether the plaintiff is entitled to walk through the courthouse door."  (Doc. 23 at 6) (internal citation and quotation marks omitted).  This argument too is unavailing.  Like the programs in *Northeastern Florida* and *Bras*, the only plaintiff that the *Wooden* court found had standing to maintain the suit was a plaintiff who was "competing for a government-sponsored benefit" and alleged that "his application has not been considered 'on an equal footing' with applications from members of the favored racial group."  *Wooden*, 247 F.3d at 1276 (finding that an applicant to the University of Georgia suffered an injury-in-fact based on

---

[4] In *Bras*, plaintiff was asked to complete a "prequalification criteria" form that was used by Pacific Bell to select a group of architectural firms to submit proposals to be considered for "improved business partnerships."  *Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869, 871 (9th Cir. 1995).  By answering "Yes" to the question "[A]re you currently certified through the Cordoba Corporation Clearing House process for Minority/Women Business Enterprise status?", firms would get ten points on their score; by answering "No," they would receive zero points. *Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869, 871 (9th Cir. 1995).

his exposure to unequal treatment at the application phase of the admissions process).

Being forced to compete in a race-based system that may prejudice Plaintiff does not apply here.  Plaintiff has not alleged that any A4 Office program required an application to participate, or that any of its members' children were not permitted to participate based solely on race.  In addition, Defendants' Opposition—which relies on the same government website that Plaintiff cites in their complaint—points to statistics that show 7,950 students "of all racial and ethnic backgrounds" have participated in the A4 programs.  (Doc. 24 at 3.)  Defendants note that this number of participating students includes 2,750 more students than the population of African American-identified students enrolled in Fresno Unified schools.  (Doc. 24 at 3.)  Thus, by implication, non-African American students are participating the A4 Office program.  Plaintiff fails to allege sufficient nonconclusory factual support that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In summary, Plaintiff here must do more than simply plead that there was "exposure to unequal treatment alone" to establish standing.  (Doc. 23 at 6.)  Plaintiff has not alleged that any A4 Program is a competitive program or that any student must apply to participate in the program, or that any student was "expos[ed] to unequal treatment" at any stage of the admissions process.  *Wooden*, 247 F.3d at 1281; *see also Ne. Fla. Chapter of Associated Gen. Contractors of Am.*, 508 U.S. at 666; *Parents Involved in Cmty. Sch.*, 551 U.S. at 719.

### 5. Conclusory Allegations are Insufficient to Establish that Plaintiff's Members Were Deterred from Joining the A4 Programs

Plaintiff relies on *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977) to argue that the allegation that "non-African American students are both made to feel unwelcome by the design of the program and, in some cases, expressly directed away from these programs" is "enough for standing," and that "nothing requires students to show up at programs at which they are not welcome in order to establish injury."  (Doc. 23.)  But again, Plaintiff does not allege factual support that it would have been "futile gesture" for any of its members' children to

attempt to join an A4 Program.  *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 366

(1977) ("A nonapplicant must show that he was a potential victim of unlawful discrimination.").

Here, the complaint does not adequately allege it was a "futile gesture" for any of its members'

children to attempt to join an A4 Program, especially given that 2,750 **non**-African American

students have participated in the A4 programs previously.  (Doc. 24 at 3.)

     "[C]onclusory allegations of deterrence are insufficient" to establish standing based on a

deterrence theory.  *Feezor v. Sears, Roebuck & Co.*, 608 F. App'x 476, 477 (9th Cir. 2015).

Plaintiff's complaint includes conclusory allegations that the students "would be interested in the

A4 Office's programs" and that "[t]he A4 programs discriminate against [the children] because of

their race in both promotion and design."  (Doc. 1 ¶¶ 11-13); *see also id.* ¶¶ 26-27 ("The A4

programs are designed and intended only for students of a particular race and are racially

exclusionary in their very design and operation," and "[t]he district's purpose is to create a

racially segregated environment in these programs as much as possible and to give preferential

treatment to certain students because of their race.")  Plaintiff alleges that "CFER has members

whose children would benefit from these programs but have not received (and reasonably believe

that they will never receive) the same outreach or invitation afforded to black students. Even if

they had learned about the A4 programs, they and their children are not made to feel welcome

because of their race."  (Doc. 1 ¶ 29.)

     These are conclusory allegations without factual support that the identified students were

actually deterred.  The Court need not give legal conclusions the presumption of truth.  *Iqbal*, 556

U.S. at 679.  And where a complaint uses "bare assertions" that "amount to nothing more than a

formulaic recitation of the elements" of a claim, such allegations "are conclusory and not entitled

to be assumed true."  *Iqbal*, 556 U.S. at 681 (internal citation and quotation marks omitted).

     "While we are mindful of the generous pleading standards that apply to civil rights

plaintiffs, 'a liberal interpretation of a . . . civil rights complaint may not supply essential

elements of the claim that were not initially pled.'"  *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631

F.3d 939, 954 (9th Cir. 2011) (quoting *Pena v. Gardner,* 976 F.2d 469, 471 (9th Cir.1992)).

Plaintiff has not alleged sufficient factual support regarding the required injury-in-fact for

standing.

### b. Fairly Traceable to Defendants' Challenged Conduct

Standing analysis requires that "there must be a causal connection between the injury and

the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of

the defendant, and not . . . th[e] result [of] the independent action of some third party not before

the court." *Lujan*, 504 U.S. at 560 (internal quotation marks and citation omitted).  "[P]laintiffs

must establish a 'line of causation' between defendants' action and their alleged harm that is more

than 'attenuated.'"  *Maya*, 658 F.3d at 1070 (citing *Allen v. Wright,* 468 U.S. 737, 757 (1984)).

Plaintiff argues that the injuries can be fairly traced to Defendant because "Fresno Unified

promulgated and enforces the challenged policies."  (Doc. 23 at 10 n.5.)  But even if the Court

were to assume that the injuries identified above were adequately pled for injury-in-fact purposes,

Plaintiff fails to allege sufficient factual support to establish that its members or their children

would suffer any cognizable injury that would be fairly traceable to Defendants' challenged

actions. Accordingly, Plaintiff fails to establish that any injury is fairly traceable under Article III.

### c. Redressability

A party seeking to establish standing must show that it is "likely, as opposed to merely

speculative, that the injury will be redressed by a favorable decision."  *Lujan*, 504 U.S. at 561

(internal quotation marks and citation omitted).

Plaintiff contends that "an injunction requiring Fresno Unified to open programs and

outreach to all students on equal terms would eliminate the unequal-treatment barrier, fully

redressing the harm."  (Doc. 23 at 10 n.5) (citing *Adarand Constructors, Inc. v. Pena, 515 U.S.

200*, 211 (1995); *Parents Involved*, 551 U.S. at 719.)

While Plaintiff alleges that it has members who have children that "are not African

American and are either eligible for or would benefit from the same types of academic support

offered by the A4 Office programs," (Doc. 1 ¶ 10),  Plaintiff has made no nonconclusory factual allegations that its members' children are actually eligible to participate in any A4 program based on age or demonstrated need, that they would actually benefit from the programs, or that any of the members would "stand to profit in some personal interest" if there was a favorable decision by the Court.  *Simon v. E. Kentucky Welfare Rts. Org*., 426 U.S. 26, 39 (1976).  The Court cannot be sure whether finding in Plaintiff's favor would redress any alleged injury, and as such, Plaintiff has not established the redressability element of the standing test.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court.")

### **Organizational Standing**

Plaintiff argues that "[t]he detail surrounding each of the members in the Complaint is sufficient to conclude that they would have independent standing if those facts are taken as true, and that is all that is required at this stage to support associational standing.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) ("In a facial attack [on standing], the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.")

An association has standing to bring suit on behalf of its members when (1) "its members would otherwise have standing to sue in their own right," (2) "the interests at stake are germane to the organization's purpose," and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc*., 528 U.S. 167, 181 (2000).  To establish standing, the association is required to "identify members who have suffered the requisite harm."  *Summers v. Earth Island Inst*., 555 U.S. 488, 499 (2009) (stating that plaintiffs claiming an organizational standing to identify members who have suffered the requisite harm).

Because Plaintiff has not met its burden of alleging that its members have standing in this action, Plaintiff cannot establish that it has standing to pursue these claims.  Accordingly, this

action must be dismissed for lack of subject matter jurisdiction.

**Ripeness**

Independently, even if the Court did not dismiss the claims on the basis of lack of subject matter jurisdiction, all claims should be dismissed because the claims are not ripe for adjudication.

"A ripeness inquiry considers whether 'concrete legal issues, presented in actual cases, not abstractions,' are raised by the complaint." *Canatella v. State of California*, 304 F.3d 843, 854 (9th Cir. 2002) (quoting *United Public Workers v. Mitchell,* 330 U.S. 75, 77 (1947)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal citation and quotation marks omitted).

In their Motion to Dismiss, Defendants argue that "Plaintiff makes no allegations that any of its members have any actual interest in A4 programs, that they are willing to seek admission or participation in those programs, or that, to date, they have been denied the benefit of any of the District's educational programs—on the basis of race or any other basis," and that Plaintiff's claims are "inherently speculative and contingent upon events that have not occurred and may never occur at all." (Doc. 15 at 5.)

Plaintiff responds that "where, as here, plaintiffs already face ongoing unequal treatment, the controversy is live," that "the A4 programs are operating and discriminating today and will continue to do so," and that the "unequal treatment is ongoing," as "Fresno Unified continues to market the A4 programs as racially exclusive, continues to perform outreach on a race-specific basis, and continues to discriminate in the presentation and availability of those programs." (Doc. 23 at 11-12.)

Plaintiff's claims are contingent on a number of factors that may or may not occur. First, its members' children must be eligible to participate in one of the A4 Office's programs—for example, the children must be in the right age range for the available programs and have the

appropriate educational need that can be addressed by an available program.  Second, the members' children must have the desire to participate in and attend the program.  Under these allegations, the Court cannot be sure the children will be eligible for or wish to participate in any A4 Office program.  And as for hardship to the parties, Plaintiff has provided no facts to determine the extent to which its members' children will face hardship from not participating in the A4 programs.  In sum, it remains speculative as to whether the problem presented by Plaintiff is ripe for the Court's consideration, as Plaintiff fails to include sufficient concrete facts by which to make any such determination.  *See Texas v. United States*, 523 U.S. at 302.

Ripeness is designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements."  *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967).  Accordingly, the Court finds that, based on the allegations included in Plaintiff's complaint, that this matter is not ripe for adjudication.

### LEAVE TO AMEND

A court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  "In assessing whether leave to amend is proper, courts consider the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment. *Kroessler v. CVS Health Corp*., 977 F.3d 803, 814–15 (9th Cir. 2020) (internal quotation marks and citation omitted).

The Court has not previously granted Plaintiff an opportunity to amend its complaint, and because there has been no indication of undue delay, bad faith, or dilatory motive on the part of either party, the Court will grant Plaintiff an opportunity to amend its complaint to set forth allegations to cure the deficiencies set forth above.

### ORDER

For the foregoing reasons, the motion to dismiss the complaint will be granted with leave to amend.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's complaint is **dismissed** for lack of subject matter jurisdiction with **leave to amend**;

2. Within thirty (30) days from the date of service of this order, Plaintiff shall file a first amended complaint curing the deficiencies identified by the Court in this order; and

3. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to obey a court order, failure to prosecute, and failure to state a claim.

IT IS SO ORDERED.

Dated:   __August 12, 2025__            ___/s/ _Barbara A. McAuliffe____
                                        UNITED STATES MAGISTRATE JUDGE