WILSON C. FREEMAN, Ariz. Bar No. 036953*
Email: WFreeman@pacificlegal.org
  *Counsel for Service*
JOSHUA P. THOMPSON, Cal. No. 250955
Email: JThomspon@pacificlegal.org
  *Local Co-Counsel*
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

GLENN E. ROPER, Colo. Bar No. 38723*
geroper@pacificlegal.org
Pacific Legal Foundation
1745 Shea Center Dr., Suite 400
Highlands Ranch, CO 80129
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

*Attorneys for Plaintiffs*

**pro hac vice*

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| CALIFORNIANS FOR EQUAL RIGHTS FOUNDATION,<br><br>Plaintiff,<br><br>v.<br><br>MISTY HER, interim superintendent of the Fresno Unified School District; and VALERIE F. DAVIS, President of the Fresno Unified School District,<br><br>Defendants. | No. 1:25-cv-00250-BAM<br><br>**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION**<br><br>Judge: Barbara A. McAuliffe<br>Date: September 26, 2025<br>Time: 9:00 a.m.<br>Place: Courtroom 8, 6th floor<br><br>Complaint Filed: February 27, 2025 |

Pltf.'s Memo. in Supp. of Mot. for Reconsideration

**INTRODUCTION**

In this case, Plaintiff Californians for Equal Rights (CFER) challenged Fresno Unified School District's African American Acceleration Office's (A4) programs as unconstitutional under the Equal Protection Clause and the California Constitution. *See generally* Doc. 1 (Complaint). On August 12, this Court dismissed CFER's complaint for lack of standing and ripeness. *See* Doc. 25, Order Granting Motion to Dismiss with Leave to Amend (Order). However, the Court's dismissal relied on taking judicial notice of information from Fresno Unified's website that CFER disputes and that appears to have been added to the website *after* suit was filed in this case. This reliance was legal error, and the Court should correct it and reconsider its grant of the motion to dismiss.[1]

Reconsideration is appropriate because the Court's decision to take judicial notice of information on Fresno Unified's website was improper for two main reasons: (1) standing must be assessed as of the time of filing, not in light of subsequent website edits; to the extent the revised website indicates that the A4 programs are "open to all," the changes are a voluntary-cessation maneuver that cannot defeat jurisdiction; and (2) even if the Court can take judicial notice of the existence of the website, the truth of the website's contested factual assertions may not be accepted on a Rule 12 facial challenge.

Reconsideration is warranted under Rule 59(e) and Local Rule 230(j) to correct clear legal error and to account for "new or different facts or circumstances" (the fact that the website was subject to several post-filing edits) that were not previously before the Court. Here, Fresno Unified first asked for judicial notice of the information on its website in its reply in support of its motion to dismiss. CFER never got a chance to reply to this argument and brief the issues associated with judicial notice.[2] CFER respectfully asks the Court to vacate its order and deny Defendants' motion to dismiss, or at minimum to reconsider the ruling without crediting the revised website and allow appropriate supplemental briefing or limited jurisdictional discovery.

---

[1] Counsel for CFER conferred with counsel for Defendants who have indicated they oppose this motion.
[2] Fed. R. Evid. 201(e) also requires that a party be heard on the propriety of judicial notice and the nature of the fact to be noticed.

# BACKGROUND

On February 27, 2025, CFER filed a complaint in this Court challenging Fresno Unified's A4 programs as violating the federal and state constitutions, as well as Title VI. Doc. 1, Complaint. On April 21, 2025, Fresno Unified filed a motion to dismiss under Rule 12(b)(1). Doc. 15 (Motion). It made three arguments: First, that because CFER failed to allege that their members were excluded from a specific A4 program, there was no justiciable injury. Motion at 4. Second, that CFER lacked standing because none of the members were named, nor had any alleged that they were excluded from a specific A4 program. *Id.* at 5. Finally, Fresno Unified argued that the case was not ripe because CFER's members had yet to be excluded from a program. *Id.*

Fresno Unified's brief in support of its motion only mentioned the A4 website to say that "[w]hile Plaintiff claims that its members do not know about A4 programs, Plaintiff demonstrates knowledge of the programs by alleging their existence and incorporating the prominent and public District website containing program descriptions and reports that the A4 program serves all racial and ethnic groups." Motion at 4. The motion did not ask the Court to take judicial notice of the website and gave no information about the content of the website.

On May 29, 2025, Fresno Unified filed a reply brief in support of its motion to dismiss, which—for the first time—argued that the Court should take judicial notice of the contents of Fresno Unified's website. Doc. 24 (Reply). It alleged, again for the first time, that the website states: "A4 has served 7,950 students of all racial and ethnic backgrounds. Per the program description, that is 2,750 more students than the entire African American population at Fresno Unified." Reply at 3. Only in its reply brief did Fresno Unified argue that the Court should take judicial notice of these statistics. Reply at 3–4.

But neither Fresno Unified's brief in support of its motion nor its reply brief mentioned that the website had recently and significantly changed, at least twice. The language cited in the reply brief was not on the website when CFER prepared and filed its complaint. Instead, it appears that— *after* CFER filed its complaint—Fresno Unified made, and has continued to make, significant alterations to the contents of its website in a transparent attempt to respond to CFER's specific allegations, including adding statistics and changing the language marketing the program.

Although CFER is not aware of screen captures taken of the webpage on the day the complaint was filed, the "Wayback Machine"[3] located at http://www.archive.org shows a very different A4 program webpage in its snapshot of December 5, 2024—the most recent archived page prior to the filing of the complaint. Here is the opening paragraph titled "Our Purpose" from the A4 program's website that was archived on that date:

> The Office of African American Academic Acceleration (A4) serves African American and black pre-K through 12th grade students throughout Fresno Unified School District. With over 12 innovative programs and initiatives, A4 is dedicated to equipping students, parents, and families with the resources, support, and opportunities they need to excel and reach their highest potential.

*See* Freeman Decl. Ex. 1. By contrast, here is the same paragraph as of March 22, 2025—about a month *after* CFER filed its complaint:

> The Office of African American Academic Acceleration (A4) serves African American and Black pre-K through 12th grade students throughout Fresno Unified School District.
>
> During the 2023/24 academic year, **A4 proudly served 1,212 single-race African American and Black students**, representing 23% of Fresno Unified's total enrollment of 5,200 single-race African American and Black students. In total, in the 2023/2024 academic year, **A4 has served 7,950 students of all racial and ethnic backgrounds.**
>
> **With over 13 innovative programs and initiatives**, A4 is dedicated to equipping students, parents, and families with the resources, support, and opportunities they need to excel and reach their highest potential.

*See* Freeman Decl. Ex. 2. And here is the same paragraph as of today:

> The Office of African American Academic Acceleration (A4) serves pre-K through 12th grade students throughout Fresno Unified School District.
>
> During the 2023/24 academic year, **A4 proudly served 1,212 single-race African American and Black students**, representing 23% of Fresno Unified's total enrollment of 5,200 single-race African American and Black students. In total, in

---

[3] The Wayback Machine is a project of The Internet Archive, a 501(c)(3) non-profit, that provides a digital library of Internet sites and other cultural artifacts in digital form. *See* About the Internet Archive, https://archive.org/about/. The screenshots attached to this Motion are introduced for the limited purpose of showing that Fresno Unified's website was fluid and changed around the time the complaint was filed. *See* Fed. R. Evid. 201(b) (court may take judicial notice of a fact that is not "subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"). As explained below, a true and complete timeline of Fresno Unified's website and the changes made, and the reasons for those changes, are proper subjects of discovery.

> the 2023/2024 academic year, **A4 has served 7,950 students of all racial and ethnic backgrounds.**

*See* Freeman Decl. Ex. 3.

In granting Fresno Unified's motion to dismiss, the Court took judicial notice of the content of the revised website as described in Fresno Unified's reply brief, not just for the fact that the website now said what Defendants asserted it said, but also that the statistics and other information that Defendants asserted on the website were, in fact, true. *See, e.g.*, Order at 5–7, 18.

## ARGUMENT

A motion for reconsideration should be granted if "the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Here, reconsideration of the order granting a motion to dismiss is appropriate for two main reasons. First, the shifting content of Fresno Unified's website is highly significant to this case, and this information was not previously before the Court. The changes to the website matter because standing is assessed at the time the complaint is filed—post-filing events cannot defeat standing. To the extent the Court takes judicial notice of the content of the website, it should have been the website at the time the complaint was filed, not the website today. Second, the Court's decision to take judicial notice of the truth of the information on the website—which postdates the complaint and which CFER disputes—is clear error. While the fact that the website currently says what it says cannot "reasonably be questioned," the same cannot be said for whether that information is true, accurate, and complete. Reconsideration is appropriate in these circumstances.

**I.    The content of the webpage mattered—at the time of filing**

Standing is assessed at the "outset of the litigation." *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *Wilbur v. Locke*, 423 F.3d 1101, 1107 (9th Cir. 2005), *abrogated on other grounds by Levin v. Com. Energy, Inc.*, 560 U.S. 413 (2010) ("As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of the filing of the complaint …." (citation omitted)). "[P]ost-filing developments do not defeat jurisdiction if jurisdiction was properly invoked as of the time of filing." *United Steel, Paper &*

*Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1091–92 (9th Cir. 2010).

The complaint has two paragraphs that cite to the Fresno Unified website. First, in paragraph 20, the complaint cites to the language on the website stating that "[t]he stated goal of the A4 Office is to 'ensure African American and Black students not only meet academic goals but thrive in a nurturing and empowering environment.'" Complaint ¶ 20. Second, in paragraph 22, the complaint describes some of the race-focused programs that the A4 Office oversees, again quoting language from their descriptions on the website. *Id.* ¶ 22. In addition to these two paragraphs, paragraph 23 alleges that "Official descriptions, advertisements, and District communications brand these programs as being 'for African Americans'—and do not indicate that non-African American students are welcome." *Id.* ¶ 23. These paragraphs contribute to a showing that the A4 programs discriminate based on race in violation of the Equal Protection Clause, the California Constitution, and Title VI because such programs are not obviously and apparently open to all students.

CFER's alleged injury in this case comes from "the denial of equal treatment," not the loss of access to any specific benefit. *Ne. Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993); *see Bras v. Cal. Pub. Utilities Comm'n*, 59 F.3d 869, 873–74 (9th Cir. 1995). To the extent the A4 programs were marketed, as CFER alleged, without indicating that "non-African American students are welcome"—that is unequal treatment, which gives rise to a justiciable injury. The content of the original website at the time the complaint was filed is thus relevant to CFER's claims. And that original website stated that the program "serves African American and black pre-K through 12th grade students throughout Fresno Unified School District." Freeman Decl. Ex. 1. It made no mention of the availability of the program to any students of other races and contained no statistics about the program which would suggest to a reader the program was available to all.

The facts at the time the complaint was filed are the facts which matter for standing—and those facts involve the website as it was prior to February 27, 2025, when it provided no indication the A4 programs were available to all students regardless of race. The content of the *revised* website, by contrast, has no bearing on standing. *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506

1  F.3d 832, 838 (9th Cir. 2007) ("The existence of standing turns on the facts as they existed at the
2  time the plaintiff filed the complaint."). And to the extent that Fresno Unified contends that the
3  post-filing edits to the website "cure" Plaintiff's injury by now indicating that the programs are
4  "open to all," that would be a mootness argument, not a standing argument.[4] And on mootness,
5  "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be
6  expected to recur lies with the party asserting mootness." *Friends of the Earth, Inc.*, 528 U.S. at
7  170. As the Supreme Court recently reiterated, this is a "formidable" standard; the Court should
8  not simply accept the government's change of conduct as enough to dismiss a lawsuit. *FBI v. Fikre*,
9  601 U.S. 234, 240–42 (2024).

Finally, the fact that Fresno Unified felt the need to change the website after the complaint was filed suggests that it recognized the unconstitutional nature of the previous website and program branding. Discovery is necessary to understand why and precisely when these changes were made. If the Court is inclined to consider dismissal based on changes to the website, it must first permit CFER to take limited jurisdictional discovery on this issue.

**II.   It is clear error to take judicial notice of the content of the website for the truth of the matters asserted.**

The A4 website's language has changed at least twice since December 2024. First, the language stating that the A4 program serves "African-American and Black students" was changed to state that the program serves "pre-K through 12th grade students throughout Fresno Unified School District." *Compare* Freeman Decl. Ex. 1 *with* Freeman Decl. Ex. 3. Second, the revised website adds purported statistical data, stating that during 2023 to 2024, "A4 proudly served 1,212 single-race African American and Black students … [i]n total, A4 has served 7,950 students of all racial and ethnic backgrounds." Freeman Decl. Ex. 3. In taking judicial notice of this information, the Court concluded that these statistics show that "non-African American students are participating

---

[4] Even as revised, CFER maintains that a mention on the website that suggests that some non-African American students may participate in these programs does not suffice to contradict its well-pleaded allegations about the ways in which the programs exclude and are promoted to exclude non-African Americans. Furthermore, the fact that some programs may be available to some students of other races hardly means that all programs are equally open to all, and the complaint credibly alleges that the A4 programs are not equally available.

Pltf.'s Memo. in Supp. of Mot. for Reconsideration

6

1 in the A4 Office program." Order at 18. Courts are, of course, permitted to take judicial notice of
2 undisputed facts in public records. The existence of the A4 website and the fact that the website
3 says what it says is undisputed and cannot reasonably be questioned. Fed. R. Evid. 201(b). But a
4 court may not take judicial notice of *disputed facts*. Whether the A4 Office programs are, in fact,
5 open to all is not merely disputed in this case. It is at the core of CFER's allegations that the opposite
6 is true. Thus, judicial notice and acceptance of the self-serving and untested statistics and statements
7 on the revised website—for their truth—is improper.[5]

8  Defendants styled their Rule 12(b)(1) motion as a facial attack. Facial challenges to
9 jurisdiction are adjudicated under the "familiar Rule 12(b)(6) standard," *Bowen v. Energizer*
10 *Holdings, Inc.*, 118 F.4th 1134, 1143 n.7 (9th Cir. 2024), meaning that the Court must take all
11 alleged facts in the complaint as true and make all reasonable inferences in favor of Plaintiff.
12 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). CFER's allegations include multiple factual, non-
13 conclusory allegations about the A4 programs, including: that they are marketed as being "for"
14 black students and are not marketed as being open for all (Complaint ¶¶ 22–23); that "teachers
15 directly invite their African American students … and do not encourage or inform non-black
16 students even if they are in similar academic need" (*id.* ¶ 24); and that "[n]on-black students who
17 learn about A4 programs are directed toward other offerings because of their race," (*id.* ¶ 25). Those
18 facts must not only be assumed true at this stage, but reasonable inferences from those facts should
19 be taken in CFER's favor. Instead concluding that the A4 programs are equally open to all—based
20 on post-filing and self-serving statements on a website controlled by Defendants—the Court
21 erroneously contravened these basic principles.

22  The Ninth Circuit and other federal courts of appeal have cautioned against taking judicial
23 notice of facts that may be in dispute. For example, in *Lee v. City of Los Angeles*, 250 F.3d 668,

---

[5] The Court's dismissal order stated that "there is no dispute *by Defendants* that the website information matches what can currently be found on Fresno Unified's website." (p. 7) (emphasis added) Of course Defendants do not dispute their own assertions about the website. To the extent that the Court meant to refer to CFER instead of Defendants, CFER did not have any opportunity to dispute Defendants' assertions about the website because they were raised in the reply brief. As noted herein, CFER *does* dispute the truth of Defendants' assertions about the scope and availability of the A4 program and maintains that the assertions and statistics on the website are proper subjects of discovery.

Pltf.'s Memo. in Supp. of Mot. for Reconsideration
7

689 (9th Cir. 2001), the Ninth Circuit concluded that a district court erred in taking judicial notice of the content of a waiver of extradition form and an extradition hearing transcript. As here, those materials had been mentioned in the complaint, and the Ninth Circuit held that "the district court had authority under Rule 201 to take judicial notice of the *fact* of the extradition hearing, the *fact* that a Waiver of Extradition was signed … and the *fact* that [the criminal defendant] purportedly waived his right to challenge his extradition …." *Id.* at 689–90. However, the court could *not* properly take judicial notice of the content of those records and accept them as true: "when a court takes judicial notice of another court's opinion, it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Id.* at 690 (quoting *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426–27 (3d Cir. 1999)).

Similarly, in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018), the Ninth Circuit determined that a district court had abused its discretion when it took judicial notice of disputed facts in an investor call transcript submitted to the SEC, among other documents. *Id.* at 1000. As the court explained, "just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id.* at 999. The transcript itself was subject to reasonable dispute and varying interpretations. In that context, taking judicial notice of the content of the transcript was an abuse of discretion. The court also cautioned courts that "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Id.* at 1003.

Here, the data posted on Fresno Unified's website (again, apparently after the complaint was filed), is subject to differing interpretations and meanings. It is far from obvious what is meant by saying the "A4 program" "has served 7,950 students of all racial and ethnic backgrounds." Reply at 3. What does it mean to say that the A4 programs "served" a student? What proportion of students who wanted to participate in the program were permitted to participate, and did that vary by race? Does the fact that non-black students participated in some way mean the program was equally open to all? How did Fresno count and classify these students by race? Were every one of the A4 programs equally open to participation by non-African American students, or were some of them

more racially selective? These are just some of the fundamental questions that have not and cannot be answered on this record. Discovery is needed to determine whether Defendants' assertions on their website are true, complete, and accurate—and how those assertions should properly be interpreted.

## CONCLUSION

The Court should grant reconsideration, vacate its prior opinion, and deny Defendants' motion to dismiss.

DATED: August 26, 2025.

Respectfully submitted,

WILSON C. FREEMAN*
JOSHUA P. THOMPSON
GLENN E. ROPER*


By  /s/ Wilson C. Freeman
    WILSON C. FREEMAN

*Attorneys for Plaintiff*

*pro hac vice

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2025, the forgoing document was filed via the court's electronic filing system, which provides notice of filing to the following:

Michael J. Davis
Matthew T. Besmer
ATKINSON, ANDELSON, LOYA, RUUD & ROMO
5075 Hopyard Road, Suite 210
Pleasanton, CA 94588-2797
MDavis@aalrr.com
Matthew.Besmer@aalrr.com

By /s/ Wilson C. Freeman
WILSON C. FREEMAN